# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NOBLE FREDDIE L. FULLER-ALI, | ) | |
| | ) | |
| Plaintiff, pro se, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | **AND RECOMMENDATION** |
| | ) | |
| CITY OF HIGH POINT, | ) | 1:09CV723 |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's motion to dismiss (docket no. 7). Plaintiff has responded in opposition to the motion, and, in this respect, the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge. Therefore, the motion must be addressed by recommendation. For the following reasons, I will recommend that the court grant the motion to dismiss.

**I. Background**

Pro se Plaintiff Noble Freddie L. Fuller-Ali, who identifies himself in the complaint as "A Natural Born Aboriginal/Indigenous Divine Spirit of the Moorish

Nation,"[1] makes the following factual allegations against Defendant City of High Point:

> On the 12 day of September 2009 . . . [m]y son . . . and I were traveling on Meredith Street. We made a right turn onto Gavin Street [and] a police cruiser came up from behind our vehicle and proceeded to stop the vehicle. After stopping the vehicle officer Garrison asked my son for his driving license. My son then proceeded to give his license, the officer then proceed[ed] to say something about a gun in the car[.] I . . . informed him that I don't deal with guns, but if you want to search the truck go right ahead[.] [Another officer] walked up to the truck on my side and ask[ed] for my ID. I then stated to her that I didn't have my ID, with me. I informed the officer that I was not driving and that my son had his license and registration. Then officer J.A. Kuchler proceed[ed] to take me out of the vehicle and then said I was going to jail for not having ID, on me. I was placed in a cell for five hours, the officer then came back and charge[d] me with disorderly conduct. Magistrate Neill A. Jennings Jr. also threat[ened] me with contempt of court because he said my identification was fake and that the peoples [sic] at the DMV made a mistake. The Magistrate also said that I was crazy if I think I can change my name. He then refuse[d] to accept my ID. The bail bondsman was given my ID, to post my bail. The Magistrate told the bondsman he was not going to accept my ID, the reason he gave was that Ali is at the end of my name and it's false. I was forced to comply with the officers and Magistrat[e] under Duress and Protest . . . .

---

[1] Plaintiff and others like him, who sometimes identify themselves as members of the "Moorish Nation," often proclaim themselves in lawsuits as descended from indigenous peoples who predate the founding of the United States and are exempt from its laws and the laws of the States. These individuals often append the words "El," "Ali," or "Bey" to their last names to signify their Moorish ancestry. Numerous courts have already held as patently frivolous claims by these litigants that they are somehow immune to this country's laws by virtue of their membership in organizations such as the Moorish Nation. *See El-Bey v. N.C. Bd. of Nursing*, No. 1:09cv753, 2009 WL 5220166, at *1-2 (M.D.N.C. Dec. 31, 2009) (collecting cases). Thus, to the extent that Plaintiff argues in his response brief that he is immune from various laws by virtue of his "indigenous" ancestry, he is clearly wrong.

(Compl. pp. 4-5, docket no. 2.) Plaintiff filed this action on September 21, 2009, alleging that the City of High Point violated his "right to travel" and subjected him to "false arrest, false imprisonment, kidnapping, cruel treatment." Plaintiff further alleges that he was "injured by way of negligence, fraud, and trespassed on my freedom, and liberties." According to Plaintiff, the police officers, acting "in a circumstance of violence, oppression, malice, fraud or wanton and wicked conduct," committed a "civil rights violation." Plaintiff cites to various treaties and declarations for indigenous peoples, as well as to the Fourth, Fifth, and Ninth Amendments of the U.S. Constitution.

Although Plaintiff's complaint is largely incoherent, it is likely that he intended to file this action in part as a state law torts claim and in part as a federal civil rights complaint under 42 U.S.C. § 1983, alleging false arrest and false imprisonment. Plaintiff seeks damages of $25 million and requests, among other things, a permanent restraining order against the High Point Police Department and a public apology. On October 26, 2009, Defendant City of High Point filed a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

II.     **Standard of Review**

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.

1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*). With these principles in mind, the court now turns to the motion to dismiss.

### III. Possible Section 1983 Claim

Section 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable . . . ." 42 U.S.C. § 1983. In *Monell v. Department of Social Services of City of New York*, the Supreme Court held that municipalities could not be held liable under Section

1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." 436 U.S. 658, 691 (1978). In other words, a municipality named in a suit alleging a constitutional deprivation arising from actions taken solely by its employees or agents "cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* Though Section 1983 "plainly imposes liability on a government that, under some official policy, 'causes' an employee to violate another's constitutional rights," *id.* at 692, it cannot be read "to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Id.* Accordingly, "[t]o state a cause of action against a municipality, a section 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008) (*citing Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994)).

Plaintiff has not made allegations sufficient to support a 42 U.S.C. § 1983 claim against Defendant. That is, at no point in his complaint does Plaintiff even make the bare allegation that the named officers were acting in accordance with a custom or policy that is fairly attributable to the City of High Point. Thus, to the extent that Plaintiff attempts to state a Section 1983 claim against Defendant City of High Point, this claim should be dismissed.

## IV. Possible State Law Claims

In addition to his Section 1983 claims, Plaintiff's complaint can be read to allege that the High Point police officers falsely arrested and falsely imprisoned him in violation of state law. I find that this court lacks jurisdiction to adjudicate Plaintiff's state law tort claims against the City of High Point, as the City of High Point's sovereign immunity bars Plaintiff's state law tort claims. "Sovereign immunity ordinarily grants the state, its counties, and its public officials, in their official capacity, an unqualified and absolute immunity from law suits." *Dalenko v. Wake Co. Dep't of Human Servs.*, 157 N.C. App. 49, 55, 578 S.E.2d 599, 603 (2003) (quoting *Paquette v. County of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002)). "The rule of sovereign immunity applies when the governmental entity is being sued for the performance of a governmental, rather than proprietary function." *Id.* "Law enforcement is well-established as a governmental function, and includes the training and supervision of officers by a police department." *Pettiford*, 556 F. Supp. 2d at 524 (internal citations and quotations omitted). Accordingly, if, at the time of the alleged action, the City's officer or employee was performing the governmental function of law enforcement, sovereign immunity applies to bar any state law tort claims.

In North Carolina, a city's "[s]overeign immunity is absolute unless the defendant expressly consents to be sued or waives immunity under a statutorily created waiver." *Golden Rule Ins. Co. v. Long*, 113 N.C. App. 187, 193, 439 S.E.2d

599, 603 (1993). For a plaintiff to overcome a defense of sovereign immunity, "the complaint must specifically allege a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action." *Dalenko,* 157 N.C. App. at 55, 578 S.E.2d at 603 (quoting *Paquette*, 155 N.C. App. at 418, 573 S.E.2d at 717) (internal citation omitted). Here, Plaintiff's complaint lacks the requisite allegation that Defendant City of High Point has waived its sovereign immunity; thus, Plaintiff's complaint fails to state a claim on which relief may be granted. In sum, Plaintiff's state law tort claims are barred by the City's sovereign immunity and should be dismissed.[2]

## V. Conclusion

For the reasons stated herein, it is Recommended that the court grant Defendant's motion to dismiss (docket no. 7) and that this action be dismissed with prejudice. Furthermore, to the extent that Plaintiff's two motions to quash have also been referred to the undersigned (docket nos. 11, 13), these motions are in fact

---

[2] Defendant also argues for dismissal of a possible conspiracy claim by Plaintiff, but I see no such claim in the complaint. Although pro se complaints are to be liberally construed, courts are not required to make a case or create claims for pro se Plaintiffs when their complaints do not allege such claims. *See Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995).

responses to the motion to dismiss. Thus, the clerk should reflect on the docket sheet that these motions are no longer pending.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
February 19, 2010